UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CR. 08-50062-01-KES |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER DENYING |
| | ) | MOTION TO DISMISS |
| CURT ROMANYSHYN | ) | |
| a/k/a Constantine Romanyshyn, | ) | |
| and KENT HAZELRIGG, | ) | |
| Defendants. | ) | |

Defendant Curt Romanyshyn moves to dismiss the charges against him because the government intruded into his attorney-client relationship in violation of his Sixth Amendment rights. The government opposes the motion. The motion is denied.

**BACKGROUND**

**I.    Procedural History**

Romanyshyn and his co-defendant were scheduled to go to trial on charges of conspiracy to distribute a controlled substance and possession with intent to distribute a controlled substance on Tuesday, September 22, 2009. Docket 222. On Friday, September 18, 2009, Romanyshyn moved to continue the trial on the grounds that his local counsel, Robin Zephier, found notes reflecting at least six conversations between Romanyshyn and his North Dakota counsel, Michael Hoffman, in the case file provided by the case agent in this case, Special Agent Jeff Goble of the South Dakota Division of Criminal Investigation (DCI). Docket 322. The court granted Romanyshyn's motion to

continue, and the trial is currently scheduled for Monday, November 2, 2009. Dockets 327 & 375. Romanyshyn subsequently filed the instant motion to dismiss. Docket 356.

The court held an evidentiary hearing on this matter on October 28, 2009. Romanyshyn called two witnesses, Special Agent Goble and DCI intelligence analyst Jenny Buckley. The government did not call any witnesses. The Assistant United States Attorney assigned to Romanyshyn's case, Mark Vargo (A.U.S.A. Vargo), was present for the beginning of Special Agent Gobel's testimony, but left the courtroom before Special Agent Goble discussed the contents of any of Romanyshyn's telephone conversations. Assistant United States Attorney Gregg Peterman (A.U.S.A. Peterman) represented the government for the remainder of the hearing. At the close of the hearing, the court issued a summary opinion denying Romanyshyn's motion to dismiss the superseding indictment against him and imposing other remedial measures.

## II.  Hearing Testimony

### A.  Special Agent Goble

Special Agent Goble testified that he was the lead South Dakota agent on Romanyshyn's case. He testified that before the first trial date,[1] he talked with A.U.S.A. Vargo about providing discovery to Romanyshyn prior to trial,

---

[1] Special Agent Goble testified that the first trial date was in October 2008. In fact, the initial trial date set in this case was September 23, 2008. Docket 24. The trial was later continued to October 28, 2008. Docket 44.

including recordings of the telephone conversations Romanyshyn had while he was incarcerated at the Pennington County Jail (the jail).  A.U.S.A. Vargo advised him to copy Romanyshyn's phone conversations onto a CD and place the CD in the case file.

Special Agent Goble testified that he assigned Buckley, a member of the South Dakota National Guard's counterdrug division who had been assigned to work as an intelligence agent for DCI, the task of listening to the recordings of Romanyshyn's phone calls.  He instructed Buckley to download recordings of all of Romanyshyn's telephone calls from the jail's database in a rush fashion in order to provide them to the government before the October 28, 2008, trial date.  Special Agent Goble testified that he was responsible for giving Buckley instructions on listening to Romanyshyn's phone conversations.  He instructed Buckley to listen to the calls and record the date, phone number, participants, and a brief synopsis for each phone conversation.  Special Agent Goble told Buckley to put a star by calls that sounded funny.  He did not instruct her to avoid listening to conversations between Romanyshyn and his attorney. Special Agent Goble testified that this omission was an error on his part.

Special Agent Goble testified that Buckley prepared a handwritten call summary report for the telephone conversations she listened to.[2]  The October 28, 2008, trial date was continued before Buckley finished listening to all of the calls, so Special Agent Goble retrieved the CD and report from

---

[2] The handwritten call summary report was introduced into evidence as Exhibit 1.

Buckley and put them in the case file.  He testified that he paper clipped Buckley's report to the CD and placed it in the case file without reading it.  Special Agent Goble testified that he does not know who wrote the notation, "1st couple wks & last couple wks" on the upper left hand corner of the first page of Buckley's call summary report.  He denied that the notation was written in his handwriting.

Special Agent Goble testified that he provided a copy of the CD made by Buckley to the government in October 2008 in order to meet the discovery deadline.  He does not recall if he ever provided Buckley's written summaries to A.U.S.A. Vargo.  Special Agent Goble testified that he did not prepare a report on the contents of Romanyshyn's telephone calls, so he has no record of providing the call summary report to A.U.S.A. Vargo.

Special Agent Goble testified that he did not listen to any of the recordings of Romanyshyn's phone conversations.  He also testified that he never listened to conversations between Romanyshyn and his attorneys and that he never read the notes Buckley took on Romanyshyn's phone calls.  Special Agent Goble testified that he was aware that the word, "discovery," was mentioned in the call synopses, but did not know anything else about the substance of the conversations.  Special Agent Goble testified that Buckley did not recite pieces of substantive conversations between Romanyshyn and his attorney to him, and that he was not aware of anybody else who was privy to the recorded conversations.

Special Agent Goble testified that he has training on the constitutional rights of defendants, and that he is aware that the Constitution prohibits the government from listening to attorney-client phone calls. Regarding this right, he testified, "I recognize it and I honor it."

Special Agent Goble testified that he had general knowledge about the protocol concerning inmate telephone calls at the jail. According to Special Agent Goble, all calls made by inmates, except for conversations between an inmate and his attorney, are recorded by the jail. Special Agent Goble further testified that the phone numbers of attorneys are stored in the jail's recording system and that calls made to these numbers are not recorded. The phone numbers of local criminal defense attorneys are stored in a database. Special Agent Goble did not know if there was a protocol for cellular phone numbers. Special Agent Goble also testified that he did not know if there was a separate attorney phone at the jail.

Special Agent Goble testified that he had used recordings of inmate telephone conversations in about twenty cases in his six and one-half years with DCI, and he had never had another case in which phone calls between an inmate and his attorney were inadvertently captured. Special Agent Goble testified that he heard of inadvertent recording of inmate-attorney telephone calls when the recording system was first introduced, but that he understood that the recording system had improved since then. Special Agent Goble testified that there are failsafes in the system to prevent the recording of

conversations between inmates and their attorneys.  Special Agent Goble testified that he was advised by Lieutenant Brooke Haga, the deputy sheriff in charge of the jail, that inmates with out-of-state attorneys are supposed to advise jail staff of their attorneys' telephone numbers, but that there is no written policy regarding out-of-state attorneys.

Special Agent Goble testified that he received his subpoena duces tecum at 8 o'clock the morning of the hearing and that he attempted to obtain a call activity report listing all of Romanyshyn's calls from the jail before the 10 a.m. evidentiary hearing, but he was unable to obtain the report due to technical problems at the jail.  Special Agent Goble further testified that generally he can access call activity reports and recordings of inmate telephone calls from a designated computer in the DCI office.

### B. Intelligence Analyst Buckley

Buckley testified that she began working as an intelligence analyst at DCI in March 2009.  She was not working at DCI in 2008.  Buckley testified that Special Agent Goble gave her the task of downloading Romanyshyn's jail phone calls onto a disc, listening to the calls for drug-related information, and writing a brief synopsis of the calls.  She used a password-protected computer at the DCI office to download the calls from the jail's system, called New World.

Buckley testified that she was taught the procedure for listening to and recording inmate phone calls from Nate Schlimgen, who was the South Dakota National Guard member assigned to the DCI office before Buckley.  The procedure was not written.  In addition to instruction from Schlimgen, Buckley

6

had a one-day training session at the public safety office at which she received a brief overview of how to work in the system and where to go for information. Buckley testified that she did not receive training from any DCI agents.

Buckley identified Exhibit 1 as her notes from Romanyshyn's phone calls. She testified that the handwritten notation in the corner of the first page, "1st couple wks & last couple wks" was written by Special Agent Goble pursuant to his instructions for her to listen to the calls from Romanyshyn's first few weeks in jail and the few weeks immediately before Buckley began her assignment to summarize the calls. Buckley also testified that the entries designated with numbers five and six were written by Schlimgen. Buckley testified that she did not know how many phone calls Romanyshyn made from the jail, but estimated from her recollection of the call log that he made more than 100 calls. She completed all four pages of her written notes at the same time and did not listen to any calls that were not recorded in her notes. Buckley listened to several conversations between Romanyshyn and Hoffman and took notes on these conversations.

Buckley testified that she was unable to listen to all of Romanyshyn's calls because she ran out of time, but she attached her written notes on the calls she had finished to the CD containing recordings of Romanyshyn's calls and gave them to Special Agent Goble in March or April of 2009. Buckley testified that the four pages comprising Exhibit 1 were the only notes she gave to Special Agent Goble. Buckley does not know if Special Agent Goble turned

over the CD or notes to A.U.S.A. Vargo.  She did not keep a copy of the CD and never maintained a paper file on Romanyshyn.  Buckley testified that aside from her written notes, she never shared any information with anybody regarding Romanyshyn's conversations with Hoffman.  Buckley never had a meeting with Special Agent Goble or A.U.S.A. Vargo about Romanyshyn's phone calls, she never talked to A.U.S.A. Vargo or anybody in his office about what Romanyshyn and Hoffman said, and she never told Special Agent Goble the words she heard.  Buckley also testified that she never saw Special Agent Goble reading her notes, she never pointed anything out to him from her notes, and she never heard him talk to her about her notes.

Buckley testified that she does not have any legal or law enforcement training.  She received some training on the Constitution, including the Sixth Amendment, through the South Dakota National Guard.  Buckley testified that she did not know that she was not supposed to listen to calls between an inmate and his attorney.

## III. Documentary Evidence

The call summary report prepared by Buckley at the instruction of Special Agent Goble was admitted into evidence as Exhibit 1.  The report totals four pages of handwritten notes.  The first two pages include notations dated July 17, 2008, through July 25, 2008.  The last two pages include notations dated March 11, 2009, through March 19, 2009.  All of the notations appear to be in the same handwriting, which Buckley identified as her own, except for a notation in the upper left-hand corner of the first page saying, "1st couple wks

8

& last couple wks" and entries numbered five and six on the first page.[3]

Exhibit 1 contains six entries reflecting calls made to Hoffman's cell phone or office. One entry reflects a call made to Hoffman's cell phone number, 701-471-7650, on July 17, 2008. The other entries reflect calls made to Hoffman's office phone number, 701-355-0900, on July 23, 2008, July 24, 2008 (two calls), and July 25, 2008.

A.U.S.A. Vargo represented to the court before leaving the hearing that he had not reviewed Exhibit 1 or Exhibit 2.

## DISCUSSION

Romanyshyn moves to dismiss the superseding indictment against him on the grounds that the government intruded into his Sixth Amendment rights. The Sixth Amendment right to counsel guarantees the right to effective assistance of counsel. Clark v. Wood, 823 F.2d 1241, 1249 (8th Cir. 1987). "It is clear that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him." Mastrian v. McManus, 554 F.2d 813, 820-21 (8th Cir. 1977) (internal quotation omitted). "To establish a sixth amendment violation, a criminal defendant must show two things: first, that the government knowingly intruded into the attorney-client relationship; and second, that the intrusion demonstrably prejudiced the defendant, or created a substantial threat of prejudice." United States v. Singer, 785 F.2d

---

[3] As noted, Buckley testified that Special Agent Goble wrote "1st couple wks & last couple wks," and Schlimgen wrote entries five and six. Special Agent Goble denied that he wrote "1st couple wks & last couple wks."

9

228, 234 (8th Cir. 1986) (internal citations omitted). A defendant is deemed to have been prejudiced if the substance of the recorded conversations was of some benefit to the government or if the representation the defendant received or the proceedings leading to the conviction were adversely affected by the intrusion. Clark, 823 F.2d at 1249; United States v. Solomon, 679 F.2d 1246, 1250 (8th Cir. 1982). In short, there must be a "nexus between [the intrusion] and some benefit to the prosecuting authorities." Mastrian, 554 F.2d at 821. "Absent demonstrable prejudice or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." United States v. Morrison, 449 U.S. 361, 365 (1981). The burden is on the defendant to prove prejudice. United States v. Kriens, 270 F.3d 597, 603 (8th Cir. 2001).[4]

---

[4] Romanyshyn argues that the government bears the burden of showing that he was not prejudiced by the intrusion into his relationship with his attorney. There is a split of opinion among the circuits over which party bears the burden of proving prejudice when a defendant has shown that the government intruded into his attorney-client relationship. United States v. Mastroianni, 749 F.2d 900, 907 (1st Cir. 1984); see also Cutillo v. Cinelli, 485 U.S. 1037, 1037 (1988) (White, J., dissenting from denial of petition for writ of certiorari) (noting circuit split on "issue of who bears the burden of persuasion for establishing prejudice or lack thereof when the Sixth Amendment violation involves the transmission of confidential defense strategy information."). Some circuits assign the burden of showing prejudice differently depending on the type of prejudice alleged. For example, the Ninth Circuit places the burden on the defendant to prove that he suffered prejudice as a result of evidence obtained by the prosecution as a result of an unconstitutional interference with the attorney-client relationship. United States v. Danielson, 325 F.3d 1054, 1070 (9th Cir. 2003). With respect to interference that results in the prosecution obtaining the defendant's trial strategy, the Ninth Circuit applies a burden-shifting analysis. Once the defendant makes a prima facie showing that the government acted affirmatively to intrude into the attorney-client

10

Here, there was an intrusion into Romanyshyn's attorney-client relationship with Hoffman in that Buckley, at the direction of Special Agent Goble, downloaded recordings of Romanyshyn's calls to Hoffman, listened to the conversations, and took notes on the substance of the conversations. Moreover, Special Agent Goble provided a copy of the CD containing conversations between Romanyshyn and Hoffman to A.U.S.A. Vargo. These actions denied Romanyshyn the right of private consultation with his attorney, and the Eighth Circuit has recognized that "an accused does not enjoy the effective aid of counsel if he is denied [this right]." See Mastrian, 554 F.2d at 820-21.

But the intrusion must be purposeful to establish a Sixth Amendment violation. Singer, 785 F.2d at 234. Here, A.U.S.A. Vargo asked Special Agent

---

relationship and obtained privileged information, the burden shifts to the government to show that no prejudice to the defendant resulted from the intrusion. Id. The split of authority remains, however, so this court is bound to apply the burden of proof as set out in Eighth Circuit law.

The Eighth Circuit interprets United States v. Morrison, 449 U.S. 361, as implicitly placing the burden of proof on the defendant, Solomon, 679 F.2d at 1250 n.8, and does not distinguish between intrusions that result in the government obtaining evidence and intrusions that result in the government obtaining the defendant's trial strategy. Under Eighth Circuit law, it is clear that "[t]he burden . . . is on the defendant to show that the representation or the proceedings leading to his conviction were adversely affected by virtue of a Sixth Amendment violation in order to obtain dismissal of the indictment." Kriens, 270 F.3d at 603; see also Solomon, 679 F.2d at 1250 ("The defendant must show that the representation he received or the proceedings leading to the conviction were adversely affected by virtue of the Sixth Amendment violation in order to obtain a dismissal of the indictment."); Mastrian, 554 F.2d at 821 ("[T]he accused must show . . . that the substance of the overheard conversation was of some benefit to enforcement officials.").

11

Goble to make a recording of all of Romanyshyn's calls from the jail. Special Agent Goble in turn instructed Buckley to download all of Romanyshyn's calls from the jail's database, listen to them, and take notes on them. He did not instruct her to avoid listening to calls between Romanyshyn and his attorney. On the other hand, Special Agent Goble did not know that phone conversations between Romanyshyn and his attorney had been recorded by the jail, nor had he ever obtained recordings of attorney-client phone calls from the jail before. The court need not decide whether these facts establish a purposeful intrusion into Romanyshyn's attorney-client relationship, however, because it is clear that the evidence does not show that Romanyshyn was prejudiced by the intrusion.

To constitute a Sixth Amendment violation, an intrusion must demonstrably prejudice the defendant or create a substantial threat of prejudice. Id. A defendant is prejudiced if the substance of the recorded conversation was of some benefit to the government, the representation the defendant received was adversely affected by the intrusion, or the proceedings leading to the conviction were adversely affected by the intrusion. Clark, 823 F.3d 1249; Solomon, 679 F.2d at 1250. Here, the intrusion into Romanyshyn's attorney-client relationship did not prejudice Romanyshyn. The substance of the recorded conversations did not benefit the government because Special Agent Goble never listened to the CD or read Buckley's notes on the conversations. As a result, no evidence was obtained as a consequence of the

intrusion. Moreover, the court has reviewed Buckley's notes on the six calls to Hoffman and finds that none of the conversations contained information that would benefit the government in any way. The conversations did not contain information that could lead the government to new evidence or reveal Romanyshyn's trial strategy. Indeed, the only conversation in the four-page call summary report that might have been helpful to the government was to the phone number 701-677-5336, which is not one of Hoffman's phone numbers. Thus, this conversation was not protected under the Sixth Amendment. Absent evidence that the intrusion led the government to new evidence, provided the government with useful information, or revealed Romanyshyn's trial strategy to the government, Romanyshyn has not shown that the substance of the conversations was of some benefit to the government. See Weatherford v. Bursey, 429 U.S. 545, 558 (1977) ("There being no tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by [the undercover agent], there was no violation of the Sixth Amendment.").

Romanyshyn also has not shown that the intrusion adversely affected the representation he has received in this proceeding. Though counsel for Romanyshyn argued that the knowledge that an inmate's phone calls with his attorney may be recorded by the jail has a chilling effect on the openness of attorney-client conversations, there is no evidence that there was a chilling effect in this case. Neither Romanyshyn nor Hoffman knew their conversations

were being recorded until Zephier found Buckley's call summary report in Special Agent Goble's case file shortly before the September 22, 2009, trial date. Romanyshyn was released on bond on April 22, 2009, so he was no longer incarcerated when he learned of the intrusion. See Docket 162. Thus, there could not have been a chilling effect in this case. Moreover, neither Romanyshyn nor Hoffman testified at the evidentiary hearing, so there is no evidence that they feel unable to have open and effective conversations and consultations. Finally, Romanyshyn has not shown that the proceedings in this case have been adversely affected by the intrusion.

In sum, the court finds that Romanyshyn has not shown a nexus between the intrusion and some benefit to the prosecuting authorities. Even if the burden were on the government to prove lack of prejudice, the court finds that the burden would be met under these facts. The government presented evidence that Buckley is the only person who knows the substance of Romanyshyn's conversations with Hoffman, that Special Agent Goble never listened to the recordings or read Buckley's notes on the substance of the conversations, and that neither Buckley nor Special Agent Goble communicated any information about Romanyshyn's conversations to A.U.S.A. Vargo.[5]

---

[5] The inconsistency between Special Agent Goble's testimony that he had Buckley prepare the call summary report in October 2008 and Buckley's testimony that she prepared the report in March or April 2009 does not affect the court's determination of whether the intrusion into Romanyshyn's attorney-client relationship was prejudicial.

Even if there were a purposeful intrusion that prejudiced Romanyshyn, Romanyshyn's motion to dismiss would be denied. "Identification of a sixth amendment violation alone . . . does not require dismissal of the indictment." Singer, 785 F.2d at 234. As the Supreme Court explained in United States v. Morrison, 449 U.S. at 364, "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." "The interests supporting the sixth amendment right, meant to assure fairness in the adversary criminal process, must be reconciled with society's competing interest in prosecuting criminal conduct." Singer, 785 F.2d at 234 (internal citation omitted). In cases where the intrusion has had or threatens some adverse effect upon the effectiveness of the attorney's representation or has produced some other prejudice to the defendant, the court must "identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." Morrison, 449 U.S. at 365.

Even though the court finds that Romanyshyn was not prejudiced by the intrusion in this case, out of an abundance of caution, the court will tailor a remedy to assure Romanyshyn effective assistance of counsel and a fair trial. The court is guided in this process by United States v. Singer, 785 F.2d 228 (8th Cir. 1986). In Singer, the government obtained copies of 56 documents from the attorney-client file pertaining to the defendant from a non-government

source. 785 F.2d at 230. The trial court found that the government's action amounted to a Sixth Amendment violation, but concluded that this violation did not warrant dismissal of the indictment. Id. at 232. Rather, the trial court fashioned a remedy to effectively insulate the defendant from the taint of the constitutional violation. Id. The trial court ordered that the government return all documents from the file except those that contained evidence of perjury, that no government attorney with any knowledge of the contents of the documents would be permitted to participate in the retrial, and that no law enforcement officer with any knowledge of the contents of the documents would be permitted to use or mention them while working on the case with the attorney assigned to retry the case. Id. The trial court did not prohibit the police sergeant who received the documents from the non-government source from continuing to work on the case or from testifying on retrial. Id. The trial court also did not prohibit the non-government source who provided the documents from testifying on retrial. Id.

The Eighth Circuit concluded that the remedial order adequately protected the defendant from prejudice resulting from the government's intrusion into his attorney-client relationship. Id. at 237. Full disqualification of the police sergeant and non-governmental source was not required because their testimony did not reflect familiarity with the documents from the attorney-client file. Id. at 235. And the possibility that information from the documents was communicated to the United States Attorney and other police

officials did not result in prejudice to the defendant because none of these officials participated in the retrial pursuant to the remedial order. Id. at 236.

Similarly, here the court finds that any adverse effect the government's intrusion into Romanyshyn's attorney-client relationship may have on the fairness of the criminal process can be neutralized by placing the original and any copies of the CD containing recordings of Romanyshyn's phone calls from the jail under seal, placing Exhibit 1 under seal and ordering any copies of Exhibit 1 destroyed, and prohibiting Special Agent Goble, Buckley, and A.U.S.A. Peterman from discussing the contents of the CD and Exhibit 1 with A.U.S.A. Vargo. The court finds that it is unnecessary to preclude A.U.S.A. Vargo from participating in the trial and subsequent proceedings because he is not familiar with the contents of Romanyshyn's attorney-client conversations. The court finds that these remedial measures would adequately protect Romanyshyn from any potential prejudice resulting from the government's intrusion into his attorney-client relationship. The extraordinary remedy of dismissal of the charges against Romanyshyn is not warranted here as "the remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression." Morrison, 449 U.S. at 366.

By so concluding, the court does not condone the government's actions. The procedures in place at the Pennington County Jail, DCI, and the United States Attorney's Office are clearly inadequate to prevent intrusion into the sanctity of the attorney-client relationship. The recording of phone calls

17

between an inmate and his attorney, even if inadvertent, risks raising questions about the integrity of the investigatory and prosecutorial practices of local governmental agents and threatens the ability of prosecutorial authorities to serve society's interest in legitimately prosecuting criminal conduct. In this case, however, the invasion did not demonstrably prejudice Romanyshyn and he is not entitled to the extraordinary remedy of dismissal.

Pursuant to the court's oral order of October 28, 2009, and based on the foregoing, it is hereby

ORDERED that Romanyshyn's motion to dismiss the superseding indictment (Docket 356) is denied.

IT IS FURTHER ORDERED that the government shall arrange for DCI intelligence analyst Jenny Buckley to make a copy of the CD containing recordings of Romanyshyn's phone calls from the Pennington County Jail and shall provide the copy to counsel for Romanyshyn.

IT IS FURTHER ORDERED that the original and any other copies of the CD containing recordings of Romanyshyn's phone calls from the Pennington County Jail shall be provided to the Clerk of Courts and placed under seal by the Clerk of Courts.

IT IS FURTHER ORDERED that Exhibit 1 shall be placed under seal by the Clerk of Courts. All copies of Exhibit 1 shall be destroyed.

IT IS FURTHER ORDERED that Special Agent Goble, DCI intelligence analyst Jenny Buckley, and Assistant United States Attorney Gregg Peterman

shall be prohibited from discussing the contents of the CD containing recordings of Romanyshyn's phone calls from the Pennington County Jail and Exhibit 1 with Assistant United States Attorney Mark Vargo.

Dated October 30, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE